# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

ROBECCA SCOTT,

        Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

        Defendant.

NO. C17-1452-JPD

ORDER AFFIRMING THE COMMISSIONER

Plaintiff Robecca Scott appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court ORDERS that the Commissioner's decision is AFFIRMED and this case DISMISSED.

        I.        FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-three year old woman with a tenth grade education. Administrative Record ("AR") at 47. Her past work experience

ORDER - 1

includes employment as a parking lot attendant at Master Park in 2008. AR at 13, 31, 48-49, 57, 860.

On August 19, 2014, plaintiff filed a claim for SSI payments. AR at 16. Although she had filed an application for DIB benefits as well, she subsequently withdrew that application and amended her alleged disability onset date to her protective filing date of August 19, 2014. AR at 16, 42-43. Plaintiff asserts that she is disabled due to depression, anxiety, PTSD, valvular heart disease, and high blood pressure. AR at 46-47.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 16. Plaintiff requested a hearing, which took place on July 19, 2016. AR at 38-62. On November 3, 2016, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform the requirements of representative occupations such as (1) cleaner/housekeeper, (2) marker, and (3) production assembler, which exist in significant numbers in the national economy. AR at 13-32. Plaintiff's request for review was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On September 29, 2017, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 4.

II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

ORDER - 2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV. EVALUATING DISABILITY

As the claimant, Ms. Scott bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On November 2, 2016, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since August 19, 2014, the alleged onset date.

2. The claimant has the following severe impairments: valvular heart disease, affective disorder, and anxiety disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and or carry 20 pounds occasionally and 10 pounds frequently. She can sit 6 hours in an 8-hour workday and stand and or walk 6 hours in an 8-hour workday with normal rest breaks. She can occasionally climb ramps and stairs, balance, stoop, bend, squat, kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. She cannot be exposed to hazards or extremes of heat. The claimant is able to perform the basic mental demands of

ORDER - 5

competitive, remunerative, unskilled work, including the ability understand, carry out, and remember simple instructions, respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting. She requires work that involves no more than frequent interactions with supervisors, coworkers, and the general public.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1973 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue in this case because claimant's past relevant work in unskilled.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act from August 19, 2014, through the date of this decision.

AR at 19-32.

## VI. ISSUE ON APPEAL

The sole issue on appeal is whether the ALJ erred in rejecting the opinion of examining psychologist J. Alex Crampton, Psy.D. Dkt. 10 at 1; Dkt. 11 at 1.

## VII. DISCUSSION

A. <u>The ALJ Did Not Err in Evaluating the Medical Opinion Evidence</u>

   1. *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 6

opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social

Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

        2.        *J. Alex Crampton, Psy.D.*

Dr. Crampton examined plaintiff for DSHS on June 24, 2016, and diagnosed her with Major Depressive Disorder (recurrent and severe with psychotic features), chronic post-traumatic stress disorder (PTSD), R/O panic disorder without agoraphobia, and generalized anxiety disorder. AR at 860-61. As a result of these conditions, Dr. Crampton opined that plaintiff had multiple marked and severe limitations that would impact her ability to maintain full-time competitive employment. AR at 861. During her mental status examination, plaintiff had a depressed and anxious mood, tense and tearful affect at times, reported occasional hallucinations ("sometimes I see things…like butterflies"), and occasional thoughts of suicide. AR at 863. She was disoriented as to the day of the month or day of the week, and was not within normal limits on memory testing or fund of knowledge. AR at 863. She could not perform serial 7s, and did not show normal insight or judgment. AR at 863.

Dr. Crampton opined that plaintiff was markedly limited in her ability to understand, remember, and persist in tasks by following very short and simple instructions, make simple work-related decisions, and ask simple questions or request assistance. AR at 861. He further opined that plaintiff was severely limited in her ability to understand, remember, and persist in tasks by following detailed instructions, perform activities within a schedule, maintain ordinarily attendance, and be punctual, learn new tasks, perform routine tasks without special supervision, adapt to changes in a routine work setting, communicate and perform effectively

ORDER - 8

in a work setting, maintain appropriate behavior in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently. AR at 861.

The ALJ rejected Dr. Crampton's opinion for several reasons. First, the ALJ found that Dr. Crampton "relied primarily on the claimant's self-report," and was unaware of the longitudinal records showing normal mental status examinations, bright, articulate, and pleasant presentations when she appeared for treatment, or her occasional failures to take medications as prescribed. AR at 29. Second, the ALJ found that Dr. Crampton's assessment of marked and severe limitations is at odds with her prior work history at the SGA level as well as the reason she stopped working at her last job (*i.e.*, termination). AR at 29, 860. Third, the ALJ found that Dr. Crampton's opinion was inconsistent with treatment notes and mental status exams in the medical record discussed above, as well as plaintiff's history of caring for a grandchild. AR at 29. Finally, the ALJ noted that plaintiff "endorsed improved symptoms with medication," and "mental status exams are primarily within normal limits, including stable mood and intact cognition." AR at 29.

    *(a)*    *Reliance on Claimant's Self-Report*

The ALJ found that Dr. Crampton "reviewed no records as part of his evaluation" and instead "relied primarily on the claimant's self-report." AR at 29. However, the ALJ erred by concluding that Dr. Crampton must have relied more heavily on plaintiff's subjective complaints than his own abnormal MSE findings. This is not clear from Dr. Crampton's opinion.

The Ninth Circuit has held that an ALJ may reject a treating physician's opinion if it is based "to a large extent" on the claimant's self-reports that have been properly discounted by the ALJ. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v.*

ORDER - 9

*Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). However, that situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinion. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (an ALJ does not provide legally sufficient reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations).

As noted above, Dr. Cramptom performed his own mental status examination in this case, and noted numerous abnormal findings on examination to support his opinion regarding her severe and marked limitations. AR at 862-63. For example, plaintiff's mood was observed to be anxious and depressed, and her affect tense and tearful. AR at 862. Her orientation was not within normal range, and he had abnormal limits for memory and fund of knowledge testing, concentration, as well as limited insight and judgment. AR at 863. Thus, the ALJ's assumption that Dr. Crampton relied more heavily on her complaints than his own abnormal findings was not a specific and legitimate reason to reject Dr. Crampton's opinion.

As discussed below, however, because the ALJ identified several other specific and legitimate reasons for discounting Dr. Cramptom's opinion, and these reasons are supported by substantial evidence in the record. As a result, the ALJ's error was harmless.

    *(b)*    *Inconsistency with Longitudinal Record Including Other Mental Status Exams*

The ALJ further found that Dr. Crampton was "unaware of the longitudinal records showing normal mental status examinations, bright, articulate, and pleasant presentations when she appeared for treatment, or her occasional failures to take medications as prescribed." AR at 29. The ALJ noted that plaintiff's "mental status exams are primarily within normal limits, including stable mood and intact cognition." AR at 29. Earlier in the ALJ's decision, the ALJ

ORDER - 10

discussed plaintiff's mental health complaints in detail and concluded that her "mental status exams are consistently within normal limits despite intermittent periods of medication noncompliance and situational stressors." AR at 26. The ALJ then cited to numerous instances in the record where plaintiff reported feeling good or feeling better on her medications, as well mental status exams that were primarily within normal limitations and showed stable mood and intact cognition. AR at 26-27. The one instance identified by the ALJ where plaintiff reported feeling anxious and unsettled with increased bouts of depression and crying also revealed that plaintiff "ran out of medication two months prior" and was therefore experience a period of medication noncompliance. AR at 27, 808. Thus, the ALJ concluded that Dr. Crampton's "assessment of marked to severe limitations" is "inconsistent with treatment notes and mental status exams in the medical record discussed above." AR at 29.

The ALJ could reject Dr. Crampton's opinion, despite the fact that his own mental status examination results differed from others in the record, because it was inconsistent with the longitudinal medical record as a whole, including mental status examinations performed by other providers. Inconsistency with the record is a specific, legitimate reason to discount a medical opinion. *See Tommasetti*, 533 F.3d at 1041 (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record). This is particularly true in this case where the ALJ did not just make a conclusory finding that Dr. Crampton's opinion was inconsistent with the longitudinal record, but instead identified and discussed the medical evidence that he believed showed "consistently normal" mental status examinations and "improvement in mental health symptoms" with medication compliance in detail. AR at 26-27. As a result, the ALJ's rejection of Dr. Crampton's opinion regarding plaintiff's severe and marked limitations due to inconsistency with the longitudinal record showing mostly

normal mental status examinations and improved symptoms with medication compliance was specific, legitimate, and supported by substantial evidence. AR at 29.

       *(c)     Prior Work History and Caring for Grandchild*

The ALJ rejected Dr. Crampton's opinion because his "assessment of marked to severe limitations is clearly at odds with her prior work history at the SGA level as well [as] the reason she stopped working at her last job[.]" AR at 29. Plaintiff argues that the fact that plaintiff was previously able to work at the SGA level, at a time when she is not alleging that she was disabled, is not relevant to the instant case where her alleged onset date is August 2014. Dkt. 10 at 5. The Court agrees. However, plaintiff fails to acknowledge that the ALJ also relied on the fact that plaintiff stopped working at her last job due to reasons unrelated to her current impairments, *i.e.*, termination by her employer. AR at 29. Specifically, plaintiff reported to Dr. Crampton (and similarly testified during the hearing) that she was terminated by her last employer at MasterPark garage after she told her co-workers that her doctor thought she had lupus. Although plaintiff did not actually have lupus, as it turned out, her employer had nevertheless terminated her employment. AR at 54-55, 860. Plaintiff testified during the administrative hearing that after she was let go, she looked for another job for a while but "then I just stopped because I was going through other issues with my primary and my doctor switching over cardiologists and stuff like that and . . . they were switching medications back and forth at that time. So I wasn't feeling that good." AR at 55-56.

Here, the ALJ could reasonably conclude that the fact that plaintiff's last job ended for reasons unrelated to her actual impairments was consistent with the other longitudinal evidence in the record showing a greater degree of functioning than found by Dr. Crampton. Under the circumstances, plaintiff's work history was a specific and legitimate reason for the ALJ to reject Dr. Crampton's opinion.

Similarly, the ALJ found that Dr. Crampton's opinion was inconsistent with plaintiff's ability to care for her grandchildren. AR at 29. Plaintiff asserts that there is no indication that plaintiff was able to regularly care for her grandchildren during her alleged dates of disability. Although a June 2013 treatment note in the record showing that plaintiff "still cares for her [eleven month old granddaughter] when her daughter is at work 5d/week" did predate plaintiff's August 2014 alleged disability onset date by over a year, other treatment notes and records reflect plaintiff's ongoing care for her grandchildren right before her alleged onset date, strongly suggesting that plaintiff continued to sporadically provide childcare services for her grandchildren well past August 2014. Specifically, when asked to describe her daily activities during a July 2014 DSHS psychological evaluation, plaintiff reported that "she tries to provide some care for her 2-year-old granddaughter." AR at 26 (citing AR at 607). In addition, an April 2014 treatment note reflects plaintiff's report that her daughter, who has three children, was requesting plaintiff's help frequently "but she is setting boundaries with her daughter and is not watching the grandchildren *when it is not convenient for her*." AR at 662 (emphasis added). Plaintiff did not report, for example, that her limitations made it difficult or rendered her unable to care for the children anymore.

Thus, the ALJ could reasonably conclude that providing childcare is an activity that was inconsistent with Dr. Crampton's assessment of plaintiff's functioning. AR at 26 (citing AR at 607). This was a specific and legitimate reason for the ALJ to reject Dr. Crampton's opinion.

(c) *Symptoms Improved with Medication*

Finally, the ALJ rejected Dr. Crampton's opinion as being inconsistent with treatment notes and mental status exams in the record showing improvement with treatment. *See Warre v. Comm'r of Soc. Sec. Admin.*, 449 F.3d 1101, 1006 (9th Cir. 2006) (holding that an

ORDER - 13

impairment that can be controlled effectively is not disabling under the Act). As noted above, plaintiff endorsed improved symptoms when she was compliant with her medication. AR at 26-27. Plaintiff asserts that "even if Ms. Scott had improved, there is nothing suggesting that Ms. Scott improved to a level that is inconsistent with Dr. Crampton's report." Dkt. 10 at 6.

The ALJ cited numerous examples in the record during the period when plaintiff was alleging disability where plaintiff reported improved symptoms with medication compliance. AR at 26-27. For example, in January 2015, plaintiff reported feeling better on increased Citalopram. AR at 27 (citing AR at 810). In February 2016, she reported that other medication had been helpful in reducing anxiety. AR at 27 (citing AR at 799). In May 2016, plaintiff reported that an increase in medication had helped reduce her nightmares. AR at 27 (citing AR at 795). Based on this evidence, the ALJ could reasonably conclude that plaintiff "endorsed improved symptoms with medication." AR at 29. This was a specific and legitimate reason, supported by substantial evidence, for the ALJ to reject Dr. Crampton's opinion. Thus, the ALJ did not err by rejecting Dr. Crampton's opinion in this case.

## VIII. CONCLUSION

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas,* 278 F.3d at 954. While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.

//

//

ORDER - 14

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

DATED this 21st day of May, 2018.

_____
JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 15